Thank you, your honors. My name is Michael Flora and I represent the appellant David Peasley. I'll be arguing the appeal of a dismissal of count six and then my colleague and associate A.B. Scholar will be arguing the appeal on count nine. Dismissal of count six for failure to exhaust was error really for one overriding reason. To this day, appellees have been unable to provide a clear plausible coherent explanation for how David was supposed to administratively exhaust this grievance that he was being denied treatment for his type 1 diabetes. If appellees can't explain this even now clearly, how was David supposed to at the time define this exhaustion procedure? In reality, he couldn't and he had no administrative remedy that was practically available to him that he had to exhaust prior to following suit. Now before getting more into the details of this case, I do want to address and distinguish this case from the main two cases cited in the briefs. Fuqua, which we cited, in which this court held that the administrative remedy was unavailable to the inmate there, and Kelly, in which appellees cited, in which the court affirmed a district of Nevada opinion holding that the administrative remedy was available. In both cases, the administrative remedy was clear, at least to the prison and to the court reviewing it, and the issue was is it just too complex or nuanced for the prisoner himself to figure out. In this case, the alleged administrative remedy is even more clearly unavailable because even the prison can't explain again clearly, plausibly, coherently what it was. So I wondered if what the prison meant might be about what kind of staff member was being complained about, whether it was health care staff or custody staff, and even that isn't entirely clear and maybe there's no way he would have known anyway, but is that your understanding of what they meant here? I don't have an understanding of what they meant, Your Honor, and I'm not quite sure that they did either. There were custody staff who were denying David access to medical treatment, and if they, if the prison's position were that, well, if it's a custody staff member, it should have been, you should have gone to a custody appeal. If it's a health care staff member, it should go to a health care appeal. They should have made that clear, and again, I think they're not clear themselves because at one point they said this should be a health care appeal, and then on the same basic complaints they said, no, this should be a non-health care appeal. So I think you're probably aware of what happened, but, you know, after he complained about this, he submitted his first appeal on this form 602, which is for non-health care issues, to the regular appeals office. The regular appeals office looked at it and said, this looks like a health care appeal, and they sent it to the health care appeals office on a form 602 HC, which is the form for health care appeals. And now, initially, the health care appeals office accepted it, and there's a notation on October 14th, they accepted it and said, yes, we're accepting it. Only two months later did they reject it and make this argument that appellees now make that, well, you should separate your medical from your non-medical issues, with no clear explanation as to what that meant, since everything seemed to concern medical issues. He resubmitted his complaint, he attempted to clarify, and then a month later the health care office again rejected or canceled the appeal, it's a little unclear, and they said, well, this should have been submitted on a form 602 to the regular appeals office, which is exactly what he did in the first place, and they already have that form. The reality is, on its face, it remains unclear how the prison expected David to do what they knew. And I want to contrast this case with the Kelly case cited by the appellees. In that case, the prisoner had two clearly distinct medical issues. One, he wanted surgery to treat a hernia, and two, he wanted pill or medication for his hepatitis C. He submitted, he was denied both, and he submitted a single complaint, and he was told to separate those two. If you look at the court's opinion, the court even notes that he was instructed, here are these two separate medical issues, separate them, resubmit. He didn't, and the court held that he didn't administratively exhaust it. Here, there were no such clear instructions, and again, it was unclear how David should have submitted this appeal. So, with that said, I'm happy to entertain additional questions from the court or turn it over to my colleague, Amy Shuler. Thank you, and we can give you the time for a rebuttal at the end, if that would be helpful. I'll reserve time just in case, 25 seconds. Thank you. Thank you. Excuse me. Thank you. Good afternoon. Your honors, may it please the court. My name is Amy Shuler. I'm an associate at DLA Piper, and I represent Mr. David Peasley, as you know, on the count six dismissal, which alleged a violation of the Eighth Amendment, and I would like to reserve one minute for rebuttal. The question before the court on this issue is whether the district court properly drew all inferences in favor of Mr. Peasley and assessed all the evidence he presented in opposition to the motion for summary judgment, including circumstantial evidence, to find that there was no genuine issue of material fact as to Officer Lopez's awareness of David's medical need to eat a meal at that time that she refused it. Could I ask, is that necessarily the way to frame the question? So, it seems like we have to figure out whether she was indifferent to a medical need, but if she knew he had crackers, how, why should we assume that it wasn't reasonable for her to think that he wasn't in a medical emergency because he could eat the crackers? Yes, well, the crackers are not sufficient to alleviate the medical distress of a diabetic patient at the time, which is why he repeatedly said, as the record shows, that he needs food, he needs food. But I don't think he said I have diabetes and I have a blood sugar crisis. He said I need food, but she said you have crackers. I mean, she may have been wrong and he may have had a crisis, but how can we assume she knew that? Yes, Your Honor, if you look at, actually, in the record there is an excerpt from her deposition transcript, and in that she knew that the crackers were something special to diabetics, and that only diabetic inmates received crackers, because there was a knowledge that diabetic, it's type 1 diabetic inmates, must regulate their their blood sugar levels at all times, and that is either with, in response to insulin shots in particular, or in general. There's, where do we see this in the record? Yes, Your Honor, if you look at ER 55, and there she said that she knew that if a person had some crackers in her pocket, it meant that they're a diabetic on insulin and they have to be carefully treated. The question to Officer Lopez in the deposition was, so crackers are something special to diabetics, and her answer is yes. So I think, oh sorry, go ahead. You know, that could mean quite a few things. It could mean he likes crackers. You implied that it meant that she should know that he's a diabetic and that it has to be treated carefully. Yes, there's a number of us. Is that just supposition, or is there something more in the record at ER 55? There is, there's more circumstantial evidence, Your Honor, of her subjective awareness of his acute diabetic condition, and that is, for example, it's at 52 to 54, where they are, this is evidence that was relevant to, in fact, count six, which is an event that occurred, these are events that occurred just one week before with Officer Lopez, and if you look on page, on ER 52, it references that Officer Lopez and David engaged in a debate about his diabetic needs. At ER 53, David said she knew the needs. At ER 54, Lopez was well aware of the diabetes, and further, there's also additional evidence in the record at ER 48 to 51, where one of David's associates, a friend in the prison, testified at length that in 2012, so a year before, there was a pattern of behavior between Officer Lopez and David Peasley, where there were several incidents where she would deny his I missed that in your brief. I'm sorry. Could you just refer me also to the pages in your brief so I can read that or reread it? Yes, Your Honor. You did indicate that. I believe so, yes, Your Honor. I will find those pages. You can bring it back later at your rebuttal. Okay, thank you, Your Honor. Okay, let's give you, I can give you each a minute for rebuttal, so let's go to the other side now, and we'll come back for rebuttal, and maybe you can find those pages. Excuse me. Good afternoon. May it please the Court. Michael Quinn, Counsel for Defendants and Appellees. In this case, the District Court's decision should be affirmed for several reasons. First, contrary to what counsel indicated earlier, Peasley failed to exhaust his administrative remedies against the defendants in this case in connection with count six as required by PLRA. In addition, plaintiff's assertion in connection with count nine that he needed lunch was not enough to raise a genuine dispute of material fact as to whether Officer Lopez was aware of a serious medical need, and relatedly, with regard to count nine as well, even if his constitutional rights had been infringed in this case with regard to that interaction about lunch, Defendant Lopez is entitled to qualified immunity. With regard to the exhaustion issue, counsel I take it you're going to come back in a minute and answer your colleague on the situation of Lopez, and what she knew. I take it you're going to cover that side. Correct. We, Lopez knew that he was diabetic, but on that particular, with regard to that, interaction regarding lunch, she, Peasley did not indicate that he was in any medical distress, he did not indicate that he had just had insulin. All he said was that he needed lunch, and the district court correctly determined that just on that statement alone, does not create a tribal issue on the question of whether Lopez was aware of a serious medical need. If you look at the relevant case law, the cases like Lawley and Clement, where Eighth Amendment claims have been allowed to go forward against a custody staff individual like Lopez, the inmates in those cases had some kind of physical manifestation of medical distress of some sort, or they said, as in Lawley, my God, I'm a diabetic, I need food. She knew he was a diabetic, and he said he needed food, so why isn't it an inference that it would be equivalent to that statement? Well, because in those cases, with regard to a diabetic, as in Lawley, he mentioned insulin, or there was some physical feature of an ashen look, deteriorating physical condition, there was none of that in this case. There was a piece stating he needed lunch, Lopez says you have an emergency snack, correct? And that was the end of it. There's just simply no knowledge, no mention of anything medical related, or any of his, he doesn't indicate anything regarding his medical condition that would put Lopez on notice that, okay, this inmate has just taken insulin and needs food. This inmate appears to be faint, or is exhibiting some sort of physical distress. Is this a finding of fact, or is it a conclusion of law, in your view? We have different review procedures for law and for facts, we defer with factual issues. In your view, is this a factual issue, or is it a legal issue? Correct, I believe the district court found that there was no tribal issue of fact, there was no factual dispute regarding whether this would create an issue regarding whether there was a medical need on the part of Peasley. Both sides agree that Peasley hasn't put forward any evidence that he stated anything regarding taking insulin, or anything beyond, I need lunch. He didn't say anything about his medical condition. They had a history, though, we know that there's in the record, at least from a week before, I'm not quite sure about a year before, but the week before, they had this whole interaction with fighting about his diabetes. There's no question she knew he had diabetes. So, why isn't it just a usual assumption that if a diabetic is saying they need a meal, that it could become a medical crisis? I don't think it's, there's nothing in the case law that would put a charge of custody officer, a non-medical personnel, with just knowledge that someone is diabetic, that they're in some sort of constant medical need for food. I mean, it's just, maybe if Lopez were a doctor, or as I said, maybe if Peasley had stated something about his condition, anything, something similar to what the individual said in Lawley, I need food, I'm a diabetic, I just took insulin, and had some sort of physical, observable distress. There was none of that in this case. Could I ask you about the first issue, about the exhaustion? So, if an inmate had scheduled surgery, critical surgery, and an officer, who's custody officer, doesn't like that inmate, and wants them to stay in distress, and locks them in their cell so they can't go to the surgery, who do they complain to about this incident? Well, I mean, ultimately, that sounds like an Eighth Amendment violation. Right, but who do you go to? Do you go to inmate appeals, or do you go to healthcare appeals? In your scenario, the officer's locked up the inmate in his cell, I think that's a, you would file a 602 staff complaint against the custody officer. So is the issue that it depends, where you file the complaint depends on what type of officer you're complaining about? Is that, that was what I was trying to figure out. It seems like that might be the case from the record, is that your understanding is, if you're complaining against a nurse, you have to go to healthcare appeals, but if you're complaining against a custody officer, you go to inmate appeals? I believe so. I mean, if you're complaining about a nurse, presumably you're complaining about some sort of medical issue. But what if the nurse hits you? Who do you complain to? You know, I think that would still be a healthcare issue, given that the nurse is a healthcare officer. So what if the nurse calls you racist names? Who do you complain to? Yeah, I mean that, the 602, the staff member, the 602 staff complaint may be broad enough to cover a nurse who calls you, uses racial epithets. Okay, so you don't sound very confident, and we looked at this record, I could not figure out where he was supposed to complain. How is a prisoner supposed to understand where to complain? Well, it was clear, there was communication from CDCR throughout this, throughout his filings, and at the very end, if you start from the back end, on January 29th of 2014, they advised him as to what color form, what form to use. And that was in reaction, Peasley's counsel ignores his filing, his submission in mid-January 2014, supplemental excerpt of record 21, where after all this, all the filings from Peasley in October of 2014, where the prison staff kicked it to healthcare immediately, because it was, that 602, which is typically used for staff complaints, custody complaints, he had the term medical used 10 or 15 times, so it was immediately sent to healthcare for review and processing. Healthcare reviews it, they get back to him in December, and they say, this actually involves multiple issues, it runs afoul of the California... But it didn't involve multiple issues, it was all about healthcare issues. Actually, if you look at the complaint itself, the appeal that he filed, he mentions medical issues, he mentions the term medical, but he also mentions a number of correctional officers. Yes, but this gets to the staff point, if he was supposed to be directing the appeal, depending on what category of staff it was, they should have said that, but it's not, where did they say, direct the appeal to the right place, depending on what type of staff member it is? They informed him in that December 30th letter. Can you point to it for me, where, on which page? It's the Supplemental Exhibit Record 22, December 30, 2013. They get back to him, they cite the Code of Regulations that this appeal involves multiple issues that do not derive from a single event. Your appeal contains custody and medical issues that cannot be addressed together. Separate your issues and resubmit healthcare issues. And where does that say it depends on the category of staff member? Well, they didn't specify the staff member, they specified based on the issues. But you're saying it depends on the type of staff member. Well, in your hypothetical, you mentioned a claim against a nurse, a typical claim against a nurse would typically involve some sort of medical issue. But his issue was a medical issue against a custody staff, so maybe it's impossible to file that. Your Honor, if you look at Supplemental Exhibit Record 21, he clarifies this. He received that letter on December 30th. He signed this other submission a week later, January 8th, 2014, where he says it is not a medical issue. He quotes that Code of Regulations section that was in, on SER 22, the December submission from the prison staff. He says, you are in the air. Multiple officers have denied access to medical care. Thus, it is not a medical issue. It is clearly a security issue involving movement of an inmate. Only then does he clarify what his claim is about. And less than a week later, the staff comes back and advises him what form to use and down to what color to use. There was no confusion on the part of the staff. This was Peasley filing multiple unrelated claims, and only three months later did he clarify it. How do you explain? How was he supposed to divide it? What do you think he was supposed to do to divide this claim? Well, in reality, there was nothing to divide. He clarifies it on that page 21, and I don't think you can ask his counsel about it. I don't think they're aware of this document, because this clearly indicates he's not asserting a medical issue. He's asserting something related to security, to the custody. Or he's trying to comply with this crazy language of division that it's called a medical issue if it's about medical staff, and it's called a custody issue if it's about custody staff. So he says, my problem is access to medical care. You're telling me that makes it not a medical issue because it's custody staff. So, okay, I'm talking about movement of an inmate. But when he sends it back there, they say it needs to be a medical, which is where this whole thing keeps going in a circle. In the end, the final communication from the CDCR was very clear. On December 29th, this is supplemental of excerpt record number five, I believe, sorry, where they advise him, if you would like to proceed, they receive his submission on page 21 about how it's not a medical issue. Less than a week later, they react to that, and they say, if you would like to proceed with a staff complaint, as he's indicated in that previous statement that he submitted, submit a green inmate parolee appeal form. And he never did. And that's the problem. If he had submitted another, they clearly indicated, if you have a staff complaint, which you apparently do, based on that CR 21, the document there, here's how you proceed. And he never did. And that runs afoul of the Ross case, where you have, the inmate has to err on the side of exhaustion. They clarified what he was supposed to do, and he didn't do it. Okay, you're over your time, so I think I need to cut you off unless my colleagues have questions. I have another question. There was something that I read that there's a counselor in staff that helps people decide which door they're going through. In terms of the door they're going through? Some person who is assigned in staff to be a counselor to the prisoners. Right. Yeah. What is the duty of that individual? Of a counselor? Well, I mean, the inmate, each inmate, I believe, has a counselor. And they can, they're there for the inmates to field questions. There's no briefing on that issue. But I believe that the inmate can always interact with this counselor if the inmate has issues or questions. I see. Okay, thank you. That clarifies it. Okay, so you each have a minute for rebuttal. Mr. Fleur, do you want to go first? Yes, Your Honor, I can go quickly. The first thing I would note is that Mr. Peasley has expressed throughout the entire process the same complaints about medical issues being denied medical treatment. I'm not sure we heard a clear explanation of how he was supposed to submit these appeals. We heard he was supposed to separate out different grievances. Then we heard he was supposed to submit a single Form 602, which is what he did in the first place. Any explanation we heard isn't found in the record. Even if it were, it wasn't explained clearly to him. He was told to submit these issues separately. He was also told this appeal is accepted, and he was told it was rejected, go file the 602. And, again, all of those responses were inconsistent. It's understandable that when he submitted that final additional paper on SER 21 mentioning medical issues, again, he's confused. So at the end of the day, there's been no clear explanation about how he was supposed to do this. He certainly didn't know. Thank you. Let's go to your co-counsel. Thank you, Your Honor. Thank you, Your Honor. First, in response to Judge Wallace's question, the opening brief cites to those excerpts of record at page 18, and it is also referenced in pages 9 through 11 of the reply. I wanted to quickly also respond that there was a suggestion that there's nothing in the case law that supports the fact that there was enough circumstantial evidence, essentially, to make an inference in Mr. Peaslee's favor that there was a violation. I wanted to read just in the farmer's case, Farmer v. Brennan in the Supreme Court case at page 848, where the Supreme Court discusses the fact that the summary judgment was granted, and the holding was that the petitioner never expressed any concern for his safety to any of the respondents. And that was the only evidence that the district court there cited for that conclusion, that there was no genuine dispute, that the respondents had no knowledge. And the court said that that wasn't correct, that there should have been a more appropriate assessment of all of the evidence, and that advance notification is not a necessary element. And that is also true in Lawley, in this court's decision in Lawley, if you look at page 421, deliberate indifference may be shown by circumstantial evidence, and that in that case at 420, there's no direct evidence that any of these named defendants knew of the risk of harm. So this is the issue here, and the question that was also raised to Mr. Quinn was about whether this is factual or legal question, and the issue is that the question is whether the district court appropriately determined that there was no genuine issue of material fact, and that should be reviewed de novo. Which is a legal question, right? Right, right, exactly. Okay, so we're over everyone's time. Thank you all for the very helpful arguments, and thank you for participating in our pro bono program. It's very helpful to our court when counsel do that, and we really appreciate your service to the court in this regard. This case is submitted, thank you all.
judges: WALLACE, FRIEDLAND, Lasnik